David J.F. Gross (CSB 290951)
Calvin L. Litsey (CSB 289659)
FAEGRE BAKER DANIELS LLP
1950 University Avenue, Suite 450
East Palo Alto, CA 94303
Telephone: (650) 324-6700
Fax: (650) 324-6701
Email: david.gross@FaegreBD.com
Email: calvin.litsey@FaegreBD.com

Kenneth A. Liebman (CSB 090438)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Telephone: (612) 766-8800
Fax: (612) 766-1600
Email: ken.liebman@FaegreBD.com

Attorneys for Plaintiff
JDS Uniphase Corporation

HEIDI L. KEEFE (178960)
REUBEN H. CHEN (228725)
hkeefe@cooley.com
rchen@cooley.com
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

Attorneys for Defendant
CoAdna Photonics, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JDS UNIPHASE CORP.,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>COADNA PHOTONICS, INC.,<br><br>　　　　　　Defendant. | Case No. 3:14-cv-01091-JST<br><br>**STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND DISCOVERY PROTOCOL** |

Plaintiff JDSU Uniphase Corporation ("JDSU") and Defendant CoAdna Photonics, Inc. ("CoAdna") submit this agreed protocol for discovery in the above-captioned matter. Upon the stipulation of the parties, the Court **ORDERS** as follows:

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

2. This Order may be modified in the Court's discretion or by stipulation.

3. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

4. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5. The parties are expected to comply with the District's E-Discovery Guidelines ("Guidelines") and are encouraged to employ the District's Model Stipulated Order Re: the Discovery of Electronically Stored Information and Checklist for Rule 26(f) Meet and Confer regarding Electronically Stored Information.

6. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

7. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

8. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

9. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe as set forth in the Guidelines.

10. Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests.  The parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case.  Cost-shifting may be considered as part of any such request.

11. Each requesting party shall limit its email production requests to a total of five search terms per custodian per party.  The parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case.  The Court encourages the parties to confer on a process to test the efficacy of the search terms.  The search terms shall be narrowly tailored to particular issues.  Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.  A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.  Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

12. Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery. Such topics should be discussed pursuant to the District's E-Discovery Guidelines.

A.    **DEFINITIONS**

    1.    "Litigation" means the case captioned *JDS Uniphase Corporation v. CoAdna Photonics, Inc.*, Case No. 3:14-cv-01091-JST (N.D. Cal.).

    2.    "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Rule 34(a) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) and Rule 1001 of the Federal Rules of Evidence (Fed. R. Evid.).

    3.    "Paper Discovery" means any document or thing discoverable under Fed. R. Civ. P. 26(b)(1) or Fed. R. Civ. P. 34 that cannot be characterized as ESI.

    4.    "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes both ESI and Paper Discovery.

    5.    "E-mail" refers to an electronic means for communicating written information through non-telephone systems that will send, store, process and receive information.

    6.    "Format" means the internal structure of a file, which defines the way it is stored and used.

    7.    "Native Format" means the format of ESI in the application in which such ESI was originally created.

    8.    "Party" or "Parties" means Plaintiff JDS Uniphase Corporation ("JDSU") and Defendant CoAdna Photonics, Inc. ("CoAdna").

    9.    "Producing Party" refers to a Party that produces documents.

    10.   "Receiving Party" refers to a Party to whom documents are produced.

    11.   "Responsive Document" means any document that is responsive to any discovery request served on the Producing Party in the Litigation that the Producing Party has agreed to produce or that the Producing Party has been ordered to produce by the Court.

    12.   "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

B.    **SCOPE**

    1.    The procedures and protocols set forth in this Stipulated Order shall govern the production of Responsive Documents between the Parties in the Litigation.  Any practice or procedure set forth herein may be varied by written agreement of the Parties or further Order of the Court.

2. Nothing in this Stipulated Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Litigation. Nothing in this Stipulated Order creates an obligation by any party to produce ESI on back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium.

3. The Parties shall not be obligated under this Stipulated Order to produce any ESI or hard copy documents that are no longer within their possession, custody or control (e.g., lost or deleted) as a result of pre-litigation policies regarding the retention and destruction of hard copy documents or the routine, good-faith operation of an electronic information system, unless the Party requesting such ESI or hard copy document establishes that there is good cause to believe that the Party from whom such ESI or hard copy document is being requested intentionally failed to preserve, deleted, or destroyed the ESI or hard copy document while under an obligation to retain it.

4. Each Party represents that it has taken reasonable steps to preserve hard copy documents and reasonably accessible ESI relevant to the case. These steps include, but are not limited to, circulation of a litigation hold notice to those employees or other individuals for whom a Party has the right to access electronic documents.

5. Notwithstanding anything to the contrary herein, the following document types are not discoverable in the Litigation except upon a showing of good cause:

   a) Deleted, slack, fragmented, or other data only accessible by forensics.
   b) Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
   c) On-line access data such as temporary internet files, history, cache, cookies, and the like.
   d) Data in metadata fields that are frequently updated automatically, such as last opened dates.
   e) Back-up data that are substantially duplicative of data that are more accessible elsewhere.
   f) Voice messages.

STIPULATION REGARDING ESI AND
DISCOVERY PROTOCOL                      5                       Case No. 3:14-cv-01091-JST

      g)   Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

      h)   Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

      i)   Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

      j)   Logs of calls made from mobile devices.

      k)   Server, system or network logs.

      l)   Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

      m) Data remaining from systems no longer in use that is unintelligible on the systems in use.

      n) Nothing in this provision or Order precludes the Parties from subsequently agreeing to otherwise or further limit the scope of discovery of ESI.

6. Absent a showing of good cause by the requesting Party, the Parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the Parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

7. The Parties shall meet and confer to resolve any disputes that arise under this Stipulated Order.  In the event the Parties cannot reach agreement on a disputed matter, either Party may submit the matter to the Court.

C.   **PRODUCTION FORMAT**

1. <u>ESI Production Format</u>:  Except as provided in Section C.8 herein, ESI shall be produced electronically, as single page, uniquely and sequentially numbered Group IV TIFF files not less than 300 dpi resolution, with a corresponding load file ("Image Load File").  The images shall be accompanied by searchable text files (".txt") containing the extracted text on a document

basis, if available.  ESI documents that are redacted for privilege will also be accompanied by searchable text files obtained by Optical Character Recognition ("OCR") of the redacted images.  The extracted text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language).  The text files shall be named to match the endorsed Document Number assigned to the image of the first page of the document.  The TIFF images shall also be accompanied by an image cross-reference load file (such as Opticon or "LFP") providing paths to all document images and the number of pages the document comprises.  The Producing Party shall also provide a data load file ("Data Load File" or "DAT") corresponding to the TIFF files, that shall contain references to the associated text files and the metadata, as reasonably available, associated with each Production Field specified in Schedule A.  There is no obligation on the Producing Party to create metadata where none exists or is not reasonably available.

2. <u>Document Numbering for TIFF Images:</u>  Each page of a document produced in TIFF file format shall have a legible, unique numeric identifier Bates number ("Document Number") not fewer than seven (7) digits electronically "burned" onto the image at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document.  The Document Number for each document shall be created so as to identify the Producing Party and the Document Number.  Plaintiff and Defendant shall have a unique identifying name.

3. <u>Production of Paper Discovery:</u>  Unless impracticable, Paper Discovery will be produced in electronic form that is text searchable via OCR technology, and searchable ASCII (".txt") files shall also be produced (or Unicode text format if the text is in a foreign language).  Each file shall be named with the unique Document Number of the corresponding TIFF document followed by the extension ".txt".

4. <u>Metadata for Paper Discovery:</u>  Information about how paper documents were kept in the course of business must be preserved (such as folder names or locations).  The Producing Party shall also provide a data load file ("Data Load File" or "DAT") corresponding to the text searchable files that shall contain the Production Fields specified for Paper Discovery in Schedule A.  A Party need not produce a non-electronic duplicate of any

Paper Discovery produced in electronic form, except that upon a reasonable request by the Receiving Party and a showing of good cause (e.g., problems with legibility or formatting), the Producing Party must produce the Paper Discovery in its original format at a mutually agreeable time and place.

5. <u>Appearance and Content:</u>  Subject to any necessary redaction, each document's TIFF image file shall contain the same information and same physical representation as the document did in its original format, whether paper or electronic, consistent with the processing specifications set forth in Section D.  The Producing Party has no obligation to investigate whether documents it is producing present imaging or formatting problems prior to the production of the documents.

6. <u>Document Unitization:</u>  If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes shall be maintained as it existed when collected by the Producing Party.  If unitization cannot be maintained, the original unitization shall be documented in a load file or otherwise electronically tracked.

7. <u>Color:</u>  Documents containing color need not be produced in color unless the production of those documents is in native format or the Receiving Party makes a reasonable request in writing for color versions.

8. <u>Production of ESI in Native Format:</u>  In the event that production of a document in TIFF image file format would be impracticable, the Producing Party shall have the option of producing such documents in Native Format.  Files that are not easily converted to image format, such as some but not all Excel and Access files, should be produced in native format.  Otherwise, after initial production of ESI in TIFF image file format, a party must demonstrate a particularized need for production of that ESI in its Native Format.  In the event that a Receiving Party requests production of Native Format ESI, the Producing Party and the Receiving Party shall negotiate in good faith about the timing, cost and method of such production.  No document produced in Native Format shall be intentionally manipulated to change the appearance or substance of the document prior to its collection.  For avoidance of doubt, unavoidable or

unintentional changes to the metadata caused by collection and review of native documents (such as "last modified" metadata) do not violate this order. When producing a file in native format, it shall be accompanied by a TIFF image marked with the words "File Produced Natively" along with the appropriate confidentiality designation (if any) and production number. Each native file shall be sequentially production numbered and a load file shall accompany it that contains the fields set forth in Schedule A. In addition, because native documents may lack production numbers or confidentiality designations branded on the face of the document when printed, any such numbers or designations shall be contained in a load file and in the name of the native document, which associates this type of information with each native file produced. Software files (such as SolidWorks files) shall not be included under this provision. The parties will meet and confer if there are any disputes regarding production of software files.

9. <u>De-duplication:</u> To the extent identical copies of documents (i.e., documents with identical hash values) appear in the files of a custodian, the Producing Party shall produce only one such identical copy. Further, to the extent that identical copies of documents appear in the files of more than one custodian, the Producing Party shall produce only one such identical copy.

10. <u>Production Media:</u> The Producing Party shall produce document images, load files and metadata on external hard drives, CDs, DVDs, or other mutually agreeable media ("Production Media"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of documents on the Production Media, and the Document Number ranges of the documents in that production. To the extent that the Production Media includes any information designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" and/or "HIGHLY CONFIDENTIAL – SOURCE CODE" under a Protective Order in this case, the label on such Production Media shall indicate that Production Media includes information so designated. Production Media shall also include text referencing the case name and number. Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Document Number range that is being replaced.

11. <u>Original Documents:</u>  Nothing in this Stipulated Order shall eliminate or alter any Party's obligation to retain Native Format copies, including associated metadata, of all ESI produced in the Litigation and original hard copy documents for all Paper Discovery produced in the Litigation.

12. <u>Proprietary Software:</u>  To the extent that documents produced pursuant to this Stipulated Order cannot be rendered or viewed without the use of proprietary software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software.

13. <u>English Language:</u>  To the extent any document exists in more than one language, the document shall be produced in English, if available.

D.     **PROCESSING SPECIFICATIONS**

The Producing Party shall collect and process documents using methods that avoid spoliation of data.  The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:

1. All tracked changes shall be maintained and displayed, to the extent reasonably feasible upon collection, so that all changes to a document are evident.

2. To the extent it is possible under the Producing Party's systems, OLE Embedded files shall not be extracted as separate documents.

3. Author comments and Presenter notes shall remain or be made visible, to the extent reasonably feasible upon collection.

4. To the extent it is possible under the Producing Party's systems, all documents shall be processed in the Global Mean Time ("GMT") time zone.

5. To the extent it is possible under the Producing Party's systems, auto-populated fields, with the exception of auto-populating "page-number" fields, shall be replaced with text indicating the field name.  For example, auto-populating "date" fields shall be replaced with the text "DATE" and auto-populating "file path" fields shall be replaced with the text "PATH".

**STIPULATION REGARDING ESI AND DISCOVERY PROTOCOL**          10                    Case No. 3:14-cv-01091-JST

E.     **TIMING AND SEQUENCING OF ELECTRONIC DISCOVERY**

The Parties will produce documents including ESI on a reasonable rolling production basis.

If the Producing Party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the Receiving Party. Absent a showing of good cause, a Receiving Party may request no more than ten (10) additional terms to be used in connection with the electronic search. Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed. The parties may meet and confer regarding disputes over search terms. If no agreement is reached during the meet and confer, either Party may submit the matter to the Court.

F.     **PRIVILEGE LOG**

1.     Consistent with Federal Rule of Civil Procedure 26(b)(5)(A), a Party withholding or redacting any Responsive Document on the grounds of privilege, immunity or any similar claim shall provide to the Receiving Party a log containing the information described in Paragraph F.2 ("Privilege Log"), except that the Parties shall not be required to provide a Privilege Log for any withheld privileged communications or work-product that post-dates the filing of the complaint. Communications may be identified on a privilege log by category, rather than individually, if appropriate. The parties hereby agree to exchange initial privilege logs by no later than forty-five (45) days prior to the close of fact discovery. Supplemental privilege logs may be provided for productions served after this date.

2.     For each document withheld or redacted, the Privilege Log shall contain the following information: (i) the date of the document; (ii) the identity of all persons who authored, signed or otherwise prepared the document; (iii) the identity of all persons designated as addressees or copyees, including blind copyees; (iv) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; (v) the type or nature of the privilege asserted (e.g., attorney-client privilege, work-product doctrine, etc.); (vi) the unique document number assigned to the withheld document;

(vii) the Bates numbers corresponding to the first and last page of any redacted document, if the document has been assigned any such Bates numbers; and (viii) the total number of pages.

3. Any email thread (i.e., a series of emails linked together by email responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be logged as one document and shall be identified by the top-most email in the thread that is withheld or redacted (e.g., if a party withholds on the basis of privilege an email thread consisting of a sent email, a first reply email and a second reply email, the thread shall be identified by the second reply email; if a party produces the same email thread but redacts the sent email and the first reply email, the thread shall be identified by the first reply email). The parties shall not be required to log identical copies of an email that is included in a thread that has been logged in accordance with this Paragraph.

4. Each member of a family that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be identified (i.e., email attaching memorandum), but members of the same family such as e-mail threads (to the extent such members are also being withheld or redacted) shall be logged together as a single entry on the Privilege Log. The Privilege Log entry should reflect that the entry pertains to a family or e-mail thread.

5. Pursuant to Federal Rule of Evidence 502(d) and Federal Rule of Civ. Procedure 26(b)(5), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

6. The Parties shall meet and confer to resolve any disputes regarding the privilege log prior to seeking relief from the Court.

G. **ADDITIONAL ISSUES**

1. **Protective Order**: The terms of any Stipulated Protective Order filed with the Court governing the inadvertent production of privileged information also govern all production pursuant to this Document Production Protocol.

2. **Inadvertent Production**:   Pursuant to Rule 502 of the Federal Rules of Evidence, the inadvertent production of documents or material subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection from disclosure will not waive the privilege or protection from disclosure.  In addition, the Parties agree that if a document subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection from disclosure is included in the documents or materials made available for inspection, such disclosure shall not be considered a waiver of the privilege or protection from disclosure.  The Producing Party must notify the Receiving Party in writing within ten (10) business days of becoming aware of the inadvertent disclosure of privileged or protected information or material.

Upon a request from a Party that has inadvertently produced any document, information, or material that it believes is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection from disclosure, each Party receiving said document, information, or material shall return all physical copies to the Producing Party and destroy all electronic copies with ten (10) business days of the notification in writing of the disclosure.  The Receiving Party shall also certify in writing that all copies of the document, information, or material have been returned and/or destroyed within ten (10) calendar days after receiving notification in writing of the disclosure.  Return and/or destruction of the document, information, or material shall not constitute an admission or concession, or permit any inference, that the returned document, information, or material is, in fact, properly subject to a claim of attorney-client privilege, the work-product doctrine, or any other right or immunity nor shall it foreclose any party from moving the Court for an order that such document, information, or material has been improperly designated or should be producible for reasons other than a waiver caused by the production. Where the document, information, or material at issue was produced in electronic form, the Receiving Party will destroy the electronic document, information, or material, and all copies, including all database records and associated files, and will return to the Producing Party the original production media containing the electronic document, information, or material immediately upon receipt from the Producing Party of a replacement production

media for that production volume including a slip sheet or redacted form of document and replacement data for the document, information, or material being removed.  Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addressee(s), and topic of the document and such other information as is reasonably necessary to identify the document and describe its nature to the Court in any motion to compel production of the document.  Such a record of the identity and nature of a document may not be used for any purpose other than preparation of a motion to compel in this Action.  After the return and/or destruction of the document(s), information, or material(s), the Receiving Party may challenge the Producing Party's claim(s) of privilege, protection, or work-product by making a motion to the Court.

H.     **MANNER OF SERVICE**

The parties will serve all documents related to this Litigation by 11:59 PM Pacific Time on the day of service, and such service shall constitute timely service on that day.  Service may be made by electronic mail to counsel of record (identified below), with the filed, submitted, or produced documents attached in .pdf format.  When the size of the file containing any such document(s) are too large for service by electronic mail, service may be made by hand delivery or by Federal Express (or similar means) for next day delivery, and a CD, diskette, .ftp site or other means of electronically providing the documents being served shall be provided.  Where service is made by next day delivery, service shall be effective on the day sent.  The Parties may electronically serve large documents via an FTP site in accordance with the same rules applicable to e-mail.  Following service, the Producing Party shall send the Receiving Party load files containing the corresponding metadata as set forth in Schedule A.

All discovery requests shall be served by electronic means in .pdf format accompanied by a Word version for use by the receiving party.  All responses and objections thereto (but not necessarily documents produced pursuant to any such request) shall be served by electronic mail in a searchable .pdf format.

The parties designate the following persons to receive documents pursuant to this stipulation:

| Party | Service by E-mail | Service by Hand or by Mail |
|---|---|---|
| **JDSU** | Ken.Liebman@FaegreBD.com<br>David.Gross@FaegreBD.com<br>Cal.Litsey@FaegreBD.com<br>Julie.Wahlstrand@FaegreBD.com<br>Andrew.Johnson@FaegreBD.com<br>Claire.Ouellette@FaegreBD.com | <u>By Mail:</u><br>Julie Wahlstrand<br>2200 Wells Fargo Center<br>90 S. Seventh Street<br>Minneapolis, Minnesota 55402-3901<br><br><u>By Hand:</u><br>Calvin L. Litsey<br>Faegre Baker Daniels LLP<br>1950 University Avenue, Suite 450<br>East Palo Alto, CA  94303 |
| **CoAdna** | hkeefe@cooley.com<br>rchen@cooley.com<br>yliang@cooley.com<br>jdouglas@cooley.com<br>jmcintosh@cooley.com<br>mweiand@cooley.com | Reuben Chen<br>3175 Hanover Street<br>Palo Alto, CA 94304 |

**STIPULATION REGARDING ESI AND DISCOVERY PROTOCOL**   15   Case No. 3:14-cv-01091-JST

1  **IT IS SO STIPULATED**, through Counsel of Record.

| Dated: September 10, 2014 | Dated: September 10, 2014 |
|---|---|
| By: */s/ Calvin L. Litsey* <br> David J.F. Gross (CA 290951) <br> Calvin L. Litsey (CA 289659) <br> Faegre Baker Daniels LLP <br> 1950 University Avenue, Suite 450 <br> East Palo Alto, CA  94303 <br> (650) 324-6700 <br> (650) 324-6701 Fax <br><br> Kenneth A. Liebman (CA 090438) <br> Faegre Baker Daniels LLP <br> 2200 Wells Fargo Center <br> 90 South 7th Street <br> Minneapolis, MN  55402 <br> (612) 766-1000 <br> (612) 766-1600 Fax <br><br> Attorneys for Plaintiff JDS Uniphase Corporation <br><br> Pursuant to Civil L.R. 5.1(i)(3), I hereby attest that I have obtained the concurrence in the filing of this document from all the signatories for whom a signature is indicated by a "conformed" signature (/s/) within this e-filed document and I have on file records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request. | By: */s/ Reuben H. Chen* <br> Heidi L. Keefe (178960) <br> Reuben H. Chen (228725) <br> COOLEY LLP <br> 3175 Hanover Street <br> Palo Alto, CA 94304 <br> Telephone: (650) 843-5000 <br> Facsimile: (650) 849-7400 <br><br> Attorneys for Defendant CoAdna Photonics, Inc. |

**SO ORDERED** this  15  day of  September , 2014, that the foregoing Agreement is approved.



_____
Hon.
United

## SCHEDULE A: Production Fields

| Field Name | Description for E-mail ESI | Description for Non-E-mail ESI | Paper Discovery |
|---|---|---|---|
| Volume | The production volume. | The production volume. | The production volume. |
| Beg Bates | Number endorsed on first page of document. | Number endorsed on first page of document. | Number endorsed on first page of document. |
| End Bates | Number endorsed on last page of document. | Number endorsed on last page of document. | Number endorsed on last page of document. |
| Page Count | Total number of pages in document. | If available, total number of pages in document | Total number of pages in document. |
| Beg Attach | Number endorsed on first page of first document in a family (i.e., documents and all attachments thereto). | N/A | Number endorsed on first page of first document in a family (i.e., documents and all attachments thereto). |
| End Attach | Number endorsed on last page of last document in a family (i.e., documents and all attachments thereto). | N/A | Number endorsed on last page of last document in a family (i.e., documents and all attachments thereto). |
| Confidential Designation | The confidential designation endorsed on the document. | The confidential designation endorsed on the document. | The confidential designation endorsed on the document. |
| FROM | Sender of email message | N/A | N/A |
| TO | Recipient of email message in the "To" field | N/A | N/A |
| CC | Recipient of email message in the "CC" field | N/A | N/A |
| BCC | Recipient of email message in the "BCC" field | N/A | N/A |
| Subject | Subject of email in the "Subject" field | N/A | N/A |
| Date Sent | Date the E-mail was sent, including month, date and year. (MM/DD/YYYY format) | N/A | N/A |
| Time Sent | Time the E-mail was sent, including hour, minute, second in Global Mean Time (HH:MM:SS). | N/A | N/A |
| Date Received | Date the E-mail was received, including month, day and year. (MM/DD/YYYY format) | N/A | N/A |

STIPULATION REGARDING ESI AND
DISCOVERY PROTOCOL                        17                     Case No. 3:14-cv-01091-JST

| Field Name | Description for E-mail ESI | Description for Non-E-mail ESI | Paper Discovery |
|---|---|---|---|
| Time Received | Time the E-mail was received, including hour, minute, second in Global Mean Time (HH:MM:SS). | N/A | N/A |
| Title | N/A | If available, verbatim subject or re: line, or discernable document title appearing on the document's first page. | N/A |
| File Create Date | N/A | If available, date the file was created including month, day and year. (MM/DD/YYYY format) | N/A |
| Date Last Modified | N/A | If available, date the document was last modified. (MM/DD/YYYY format) | N/A |
| Authors | N/A | If available, the person(s) who created, wrote, reviewed, signed, or approved the document. If no author is present, the field would be left blank. | N/A |
| Time Last Modified | Time the E-mail or corresponding draft was last modified, including hour, minute, second in Global Mean Time (HH:MM:SS). | If available, time the document was last modified, including hour, minute, second in Global Mean Time (HH:MM:SS). | N/A |
| File Name | Original file name, including file extension. | If available, original file name, including file extension. | N/A |
| File Extension | File extension of the original native file. | File extension of the original native file. | N/A |
| File Size | Size of E-mail in KB or MB. | If available, size of document in KB or MB. | N/A |
| Document Type | Describes the type of document (*e.g.*, Lotus Notes E-mail). | If available, describes the type of document (*e.g.*, Microsoft Word Document). | N/A |

| Field Name | Description for E-mail ESI | Description for Non-E-mail ESI | Paper Discovery |
|---|---|---|---|
| Conversation Index | Full text of the 44 character string of numbers and letters created in the initial email. | N/A | N/A |
| Native Path/Link | File path to where the corresponding native file is stored on production media. | File path to where the corresponding native file is stored on production media. | N/A |
| Text Path | File path to where the corresponding text file is stored on production media. | File path to where the corresponding text file is stored on production media. | N/A |
| Custodian | Owner of the data | If available, owner of the data | Owner of the data/person from whose files Paper Documents were collected and produced |
| Message ID | Unique message ID | N/A | N/A |
| Hash | MD5 hash value | N/A | N/A |